Turley J.
delivered the opinion of the court.
This bill is filed by the complainants, the heirs at law of Euphemia Montgomery, to have a deed of bargain and sale executed by her and her husband, Hugh Montgomery, to *449 Moses Austin, for a tract of land containing six hundred and forty acres, lying in Davidson county, State of Tennessee, the same having been her individual property, deliveréd up to be cancelled, they contending that the same is void, because it was never executed according to the forms of law, or if it were, that it was so procured to be done by fraud and surprise.
The facts of the case are shortly these. Euphemia Montgomery was the legal owner of the tract of land in dispute by a grant from the State of North Carolina, issued to her in her own name, and being such owner, she, in conjunction with her husband, did on the 12th day of April, 1797, in the county of Wythe, State of Virginia, the place of her residence, execute a deed of bargain and sale for the same to Moses Austin, for the consideration as therein expressed of six hundred and forty dollars. On the same day this deed of conveyance was acknowledged by her husband, Hugh Montgomery, in the county court of Wythe, and a commission directed to take her privy examination as to the relinquishment of her right of dower in the land sold. This commission never issued, but on the 14th day of April, 1797, she came into said court and was privily examined in which examination she acknowledged that she was willing that the deed of bargain and sale to Moses Austin should be recorded in the county court of Davidson, State of Tennessee. In this situation this deed of conveyance remained until the December Term, 1817, of the county court of Campbell county, State of Tennessee, when at the instance and request of Nicholas Hobson, one of the defendants, she in the absence of her husband went into open court and acknowledged that she had executed said deed freely, voluntarily and without compulsion from her husband.
The reasons upon which this deed of conveyance is sought to be cancelled, are resolved into the propositions. 1. That it has never been executed as the law directs, and has not therefore passed the estate, and 2. That if it be, such execution was acquired by fraud and imposition, advantage having been taken of a feme covert, in procuring the acknowledgment of the deed in the absence of her husband.
*450 In the decision of the first proposition, it is necessary to ascertain what are the rights of a feme covert to her real estate, and how she may part from it? The lands of a wife belong to her, notwithstanding her coverture, the husband having acquired nothing but the right to receive the rents and profits during the marriage, and a contingent tenancy by the courtesy, provided he survive her. By the provisions of the common law, this right of the wife can only be conveyed by the assurance of a fine, or common recovery, — -her deeds of every kind and description being held to be absolutely void. The reason for this distinction between the modes of conveyancing, obviously results from the fact, that the wife is under the power and protection of her husband, and is therefore supposed to have no controlling will of her own, and therefore cannot protect her estate from his rapacity, if she were permitted to convey it, by the ordinary forms of assurance, inasmuch as they are executed privately, and of consequence there can be no certainty that she has acted freely and voluntarily, and not by his compulsion.
But inasmuch as this disability to contract, so as to bind herself, does not arise from a want of discretion, but because of her social obligation to her husband, she is permitted to do so, where her rights can be protected, and when reason and justice dictate a departure from the rule. Therefore she may dispose of her estate by fine or recovery, they being, conveyances of record, which cannot be passed, but by her consent, ascertained by the examination of the court, before which the proceedings are instituted. Nevertheless, to constitute a valid conveyance by fine and recovery, from a feme covert, the husband must be a party thereto, because of his limited rights in her estate, and because he is her legal protector against fraud and imposition. We then have the examination of the wife by the court, as to her consent to the disposal of the estate to protect her from the undue influence or violence of her husband; and the consent of the husband, as expressed by his joining with his wife in the assurance, to protect him from a destruction of his right in her estate, and to secure her against the fraud and imposition of others.
This is as it should be. It. is not the policy of a well re *451 gulated community to tie up estates, or to place any restrictions upon their disposal, except such as may be necessary to give a fair protection to the owners against any undue advantage which may be obtained against them, either by fraud or the influence which the nature of such relations as husband and wife, guardian and ward, trustee and cestui que trust may bring to bear.
The mode of conveyancing by fine and recovery, being in form an action brought for the recovery of the estate, it of necessity follows, that the acknowledgment of the husband and wife, that the land belongs to the complainant must be in the same court; but it by no means follows, and indeed it has never been determined, that the acknowledgement must be simultaneous, or that the husband must give his, before his wife. Indeed the sense of the thing is otherwise. It being a suit, the acknowledgment is in the nature of a confession of judgment; and the husband and wife being joint defendants, it can make no difference, which confesses first, so that the confession be made, by both, while the suit is pending. Though there is a case or two in which the courts of England have permitted, under particular circumstances, a feme covert to levy a fine without her husband, quantum valeaf, yet it is not denied, nor could it be, that as a general rule the husband must be a party thereto, or it will not be binding even upon the wife or her heirs, unless it were levied by her as a feme sole.
Such are the rights of a married woman as secured to her by the common law; but the assurance by fine and recovery having never been used in North Carolina and Tennessee, there is no mode by which a feme covert in this state can dispose of her real estate, except that which is provided for by the statute.
The first statute on this subject was passed in 1715, c 28, Scott’s Revisal, 15. It provides, “that all deeds made by husband and wife, and acknowleged before the chief justice, or in the court of the precinct where the land lieth, the wife having been first privately examined before the chief justice, or one of the associate judges, or by some member appointed by the court of the precinct, whether she *452 acknowledged the same freely, shall be good and effectual against the husband and wife, and all persons claiming under them.”
This statute substitutes a deed of bargain and sale in the place of a fine and recovery, and authorises an acknowledgment of it either before the chief justice personally, or in the court of the precinct where the land lies. But it has made no alteration whatever as to the security given mutually to the husband and wife, by a joinder in the conveyance and by the privy examination of the wife, as to her voluntary assent thereto.
The power to receive the acknowledgment of the deed and to take the privy examination of the wife, being confined to the person of the chief justice, or the court of the precinct, the statute was found to be too restricted in its operation, and to produce evil, for remedy of which the act of 1751, c 3, was passed, by which provision was made, that when the deed had been acknowledged before the chief justice, or in the court of the county, by the husband, or proved by the oath of one or more witnesses, and the wife should be a resident of any other county, or so aged and infirm, that she could not travel to the chief justice, or the county court to make her acknowledgment, a commission might be issued for that purpose. This statute made no other alteration of the act of 1715, c 38, than to authorise a commission where the wife was a resident of another county, or was so old and infirm as to be unable to attend upon the chief justice or the county court. It still left the power to receive the acknowledgment of the deed, and to take the privy examination of the wife either personally or by commission exclusively in the person of the chief justice, or in the court of the precinct.
This amendment, time and experience proved had not gone far enough in removing the restrictions upon the right of a feme covert to alien her lands; and the act of 1813, c 79. was passed, by which it is provided, that “it shall and may be lawful to take the probate and acknowledgement of deeds made by husband and wife, for the sale and transfer of land belonging to the wife, before any court of record in this *453 state; and when said grantor resides beyond the limits of this state, before any court of record in another state or territory.” It is under the provisions of this statute that it is asked that the deed from Mrs. Montgomery shall be held to be good, and operate to convey her estate to Moses Austin.
It is not pretended that the deed can be supported by her acknowledgment made in the court of Wythe county, Virginia, in 1797; but it is contended, it can upon the acknow-ledgement made, in the county court of Campbell, in December, 1817. It cannot be successfully denied that the form of the acknowledgment made in the county court of Campbell, is in strict conformity with the provisions of law, and the only question is, whether the court had the power to take it. It is urged with great strength and ability that it had not, because it is said that by the act of 1813, c 79, no power is given to the court either in or out of the state, to take the private acknowledgment of a Jeme covert to a conveyance of her real estate, unless the deed shall have been previously acknowledged in the same court by her husband, or proven by the subscribing witnesses, which was not done in this case.
There is nothing in the wording of this statute, which requires such a construction; and if it has to be given, it must be upon the ground of analogy between her rights, as they existed at common law, and under the statute; or that she - to receive some substantial protection thereby.
There is nothing by analogy requiring such a construction.
We have seen that a feme covert cannot levy a fine but in connexion with her husband, and that he must acknowledge the right of the .cognizee to the land, as well as his wife, and in open court; but that there is nothing which makes it necessary that this should be done by them simultaneously, or by him before her, and that there can be no good reason why it should be so. In the case of a fine, it is the judgment of the court upon the acknowledgment of the husband and wife, as to the right of the cognizee, which constitutes the conveyance; and therefore, unless he has made the acknowledgment there is no conveyance as to him. But when the conveyance is by deed, the execution by the husband is a joinder *454 with the wife in tiie contract, and an acknowledgment of the rights of the vendee in the estate, and must be good without further acknowledgment on his part, unless such acknowledgment be expressly made necessary by statutory provision; and then no greater strictness will be required in making it, than such as a fair construction of the statute, according to its spirit, demands. That the estate, so far as the husband is concerned, passes from him by his execution of the deed before probate or acknowledgment, is unquestionably true, as has been determined by this court in the case of McNairy vs. Vance, 3 Yer. 171, and Turner vs. Shields, 10 Yer. 1, and by the supreme court of North Carolina in the case of *Morris vs. Ford, 2 Dev. Eq. R. 412.
This estate is inchoate before registration, but may at any time be perfected by registration; to do which, all that is necessary is, to prove the execution of the deed by the subscribing witnesses, or to procure an acknowledgment by the bargainor. It is then the registration, and not the probate or acknowledgment which perfects the title. Then so far as the rights of the husband are concerned, there is no actual necessity for an acknowledgment, his interest having passed by the execution of the deed. Why then should it be required? Not for the protection of the wife, the joinder of the husband in the deed protects her against the acts of others, and the privy examination protects her against him. Then the acknowledgment of the deed by the husband has no necessary connexion with the conveyance and acknowledgment by the wife; and upon principle cannot be required by any thing short of positive enactment.
The statute of 1813 authorises the probate and acknowledgment of deeds made by a husband and wife, before any court of record in the state, or out of it, if the bargainor resides beyond its limits; and we can see no good and sufficient reason for saying, that they may not be proven or acknowleged as any other joint deeds.
*455 But it is not necessary for us to determine, whether a deed which has not been acknowledged by the husband, or proven by the subscribing witnesses, can or cannot be obligatory upon the wife, she having acknowledged the execution on her part, with all the formalities required by law; because we are satisfied, that if an acknowledgment by the husband be necessary, and it has been made under the provisions of any law authorising it, it will, under the act of ¡813, give power to any court of record in the state, to take the privy examination of the wife. Unless we stick in the bark in the construction of the statute this must be so. It is the substance of things and not forms that we are in pursuit of; and as Judge Yates, in the case of the Lessee of Watson vs. Baily, 1 Binny, 479, has observed, “We do not take a literal strict adherence to the very words of a statute, to be essentially necessary in these cases; but the substantial requisites, by which the rights of married women are intended to be guarded by the legislature, should be preserved.” These rights are as well guarded by permitting the husband to acknowledge the deed in one court, and another to take the privy examination of the wife, as by requiring both transactions to be done in the same court.
But it is said, that Hugh Montgomery never acknowledged the deed in any court having jurisdiction to receive it.
His acknowledgment was made in the county court of Wythe, being a court of record, and it is properly certified; but this acknowledgment was made on the 12th day of April, 1797, at a period of time when there was no law authoris-ing it, and it is contended that it is therefore void and inoperative. Though this deed was thus acknowledged in 1797, yet it was not registered in Davidson county till December 11th, 1807; and on the 30th day of November, 1807, an act was passed by the legislature of the State of Tennessee, by which it was provided, “that all conveyances for the transfer of real property, which should be thereafter exhibited for registration, shall first have been proven or acknowledged in the case of resident bargainors, in the court of the county or district where the land, or a part thereof lies; and in the case of non-residents, in some court of re- *456 corc| jn some one 0f the states, or territories of the United States.”
The words, “shall have been first proven,” it is contend' ed, gives the statute a retrospective operation, and makes good the acknowledgment of 1797: and so we think. When the deed was offered for probate, it had been acknowledged in a court of record in the State of Virginia, by the bargainor, who was a non-resident, and therefore it fell within the express words of the statute, and was properly registered. We are therefore of opinion, that the deed of bargain and sale from Hugh Montgomery and his wife Euphemia to Moses Austin, has been executed according to the forms of law, and passes the estate.
But it is contended, 2. that the acknowledgment of Mrs. Montgomery which was made in the year 1817, in the county court of Campbell, is bad for two reasons. 1. That it was procured in the absence of her husband. 2. That it was procured by imposition and surprise.
There is nothing in the first objection, the absence of the husband is the very thing contemplated by law; and to require him to go to the court with her, in order that she may be there separated from him, is a refinement in argument that we cannot understand. He must be away from her; and whether the distance be a hundred yards, or a hundred miles can make no difference in principle. The idea, that he must be present to protect her from imposition is not supported by reason. He must join in the conveyance, and this is supposed to be a sufficient protection so far as other persons are concerned; but when she comes to be examined, as to her having voluntarily made the conveyance, it is as against him that she request protection, and not others.
2. Upon the second objection there is more difficulty. The acknowledgment of a deed in 1817, by Mrs. Montgomery, appears to have been made somewhat hastily. But from the view we take of the testimony, we do not think that a case of fraud or surprise is satisfactorily made out. There are but two depositions which bear upon this point.
The first is that of James McCampbell, Esq., who had sometimes transacted professional business for the family. *457 He states that the deed was given to him by James Trimble, to procure the acknowledgment of Mrs. Montgomery. When at court, in the county of her residence, Campbell, he went to her house, and stated his business. She said she did not know the interest she had in the land — seemed unwilling to make' the acknowledgment, and sent for her son-in-law, to advise with. He was unable to give her any information on the subject.
Mr. McCampbell further says, that he thought she had only a dower interest in the land. As the law has ever stood in Tennessee, her being a party to the deed at all in the case supposed, would have been not only unnecessary but embarrassing; and, with the deed in his hands, which showed where the land lay, no lawyer could have entertained and acted upon such a supposition. His impression must have been based upon a confused recollection of a long past event. But he does not prove that he told her, Mr. Trimble wished her to acknowledge the deed. He does not state, that she said any thing on the subject of her husband’s absence, or of her wish to postpone the matter. The only thing material in his testimony is stated in these words: “I am now under the impression, that I told her if she did not acknowledge the deed, the claimants might file a bill and enforce the title.”' And upon the cross examination, when the point recurs, he uses the same guarded phraseology. “I think I told her that the complainants might file a bill.” It is obvious that the witness feels some doubt whether this communication was in fact made to Mrs. Montgomery. Indeed, if he had thought her interest one of dower. only, in her husband’s land in Tennessee, he must have known that the acknowledgment and the bill to enforce it would have been alike useless.
The other witness is Charles Masey. He is the father of some of the complainants, his deposition, on the face of it, shows a very strong leaning in favor of the side which calls him.
The state of Mrs. Montgomery’s mind, he swears, was such, at the time of the acknowledgment, as to make her incapable of performing any important act. In this he is con *458 tradicted by McCampbell, by the clerk of the court, and by a host of intelligent witnesses, the immediate neighbors of Mrs. Montgomery; and sustained by no person whatever. He states conversations of McCampbell, not proved by him. He affects to have believed the deed in question related to the estate of Lemuel P. Montgomery, which opinion the deed itself would have at once removed; and it is intrinsically difficult to believe that under the circumstances spoken of, he should have been ignorant of its contents, or should not have read and examined it.
Upon the whole, we regard this witness as occupying such a relation to the parties, manifesting so strong a bias, so involving himself in his statements, and so contradicted by others, that his testimony, standing as it does alone on this point, will not justify us, in relying upon it, for the purpose of setting aside the deed.
Besides, it may be remarked, that after the lapse of twenty years, proof to have the effect, claimed for that we have commented on, ought to be clear, credible, and satisfactory; otherwise, the most solemn assurances might be rendered null and void by the vague and perplexed recollection of one witness, and the strained and doubtful statements of another.
We are therefore of opinion, that the complainants are not entitled to the relief sought; and that the decree of the chancellor be reversed and the bill dismissed.

 This case is referred to in Shields vs. Mitchell, 10 Yer. 1, in the argument of counsel and in the opinion of the court, as being reported in 4 Dev. Law Reports.